CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 21 2010
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT LEE BRUCE, JR., <br> Petitioner, | ) Civil Action No. 7:10-cv-00269 <br> ) <br> ) |
| v. | ) **MEMORANDUM OPINION** <br> ) |
| DAVID EBERT, <br> Respondent. | ) By: Hon. James C. Turk <br> ) Senior United States District Judge |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal Action No. 3:94-cr-00061-1 <br> ) |
| v. | ) **MEMORANDUM OPINION** <br> ) |
| ROBERT LEE BRUCE, JR., <br> Petitioner. | ) By: Hon. James C. Turk[1] <br> ) Senior United States District Judge |

In December 2008, petitioner filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, with the United States District Court for the Middle District of Pennsylvania.[2] In this petition, petitioner argues that he is actually innocent of his 18 U.S.C. § 924(c)(1) firearm conviction in light of Watson v. United States, 552 U.S. 74 (2007). The District Court served the § 2241 petition on the United States Attorney for the Middle District of Pennsylvania, who responded that petitioner's claims attack the validity of his conviction; should be construed as a

---

[1]The Honorable United States District Judge Glen Williams presided over the criminal action in the Charlottesville Division in 1995. As discussed infra, the court received petitioner's instant § 2241 petition via a transfer from another United States District Court. Pursuant to the court's informal and local rules, the undersigned was assigned petitioner's prior § 2255 motion to vacate. Thus, the undersigned was most familiar with the facts surrounding petitioner's convictions and was assigned the instant civil matter. Although this opinion will be docketed in the criminal action, the Clerk shall not presently reassign the entire criminal matter to the undersigned.

[2]Petitioner was incarcerated within the Middle District of Pennsylvania at the time of filing the petition, and he remains there.

motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255; and be dismissed for lack of jurisdiction because this court, in the Western District of Virginia, sentenced petitioner. The United States Attorney stated in a footnote, however, that the District Court should permit the United States Attorney for the Western District of Virginia to respond if the District Court believed that petitioner's claims were properly raised in a § 2241 petition.

Thirteen months later, the District Court entered an order stating, "that despite respondent's argument to the contrary, this [district] court has jurisdiction over the petition . . . ." and directed the United States Attorney for the Western District of Virginia to respond to the petition's merits. After receiving the government's second response and petitioner's second traverse, the District Court transferred the matter to this court, noting that "it appear[s] that the case is not a challenge to the execution of the sentence – the typical § 2241 – but a challenge to the conviction itself . . . and [the Western District of Virginia] is a more convenient forum." The District Court noted that this receiving court would not have jurisdiction under § 2241 to grant petitioner's requested relief, noted that this court could proceed under 28 U.S.C. § 1651(a), and transferred the matter. The court received the case in June 2010, ripe for disposition. After reviewing the matter, the court issues a writ of error coram nobis and vacates petitioner's conviction for using a firearm during and in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1) (1994), pursuant to 28 U.S.C. §1651(a) and Watson v. United States.

I.

Most of the evidence from petitioner's four-day jury trial is not relevant to the disposition of the instant petition. The United States Court of Appeals for the Fourth Circuit described most of the relevant facts in its memorandum opinion that affirmed petitioner's conviction.

The § 924(c) conviction arose from a videotaped[3] incident in which Bruce
offered to exchange drugs and money for a[n M-16] machine-gun. [The]
Confidential informant ["CI"] . . . testified that he met Bruce in a hotel room,
where Bruce searched the room, covered the smoke detector, and strip searched
[the CI]. In the course of negotiating with [the CI] regarding the amount of
money and drugs he would give [to receive] the gun [and cash[4]], Bruce picked
up and examined the M-16 using a bedsheet [and placed it back down inside
the hotel room[5]]. Bruce and [the CI] then moved out to the parking lot, where
Bruce showed [the CI] cocaine and crack cocaine together [and the CI saw]
. . . a Tech-9[6] firearm in [Bruce's] car. Bruce told [the CI], "I've got the dope
and I've got the cash, now, you bring the [M-16] out here and we can do a
deal." Negotiations broke off without completion of the transaction.

United States v. Johnson[7], et al., No. 95-5481, 95-5482, slip op. at 6, reported at 1997 U.S. App.

LEXIS 2303, *9-10, 1997 WL 56903, *1 (4th Cir. Feb. 12, 1997) (record citations omitted).

As a result of this act, the grand jury charged petitioner with Count Two of the

indictment[8], which reads:

That on or about the 15th day of April 1994[9], the [petitioner], . . . [in] the

---

[3]The trial record reveals that the government entered into evidence a video recording, which lacked a useful audio track, of the events inside the hotel room. However, the video recording is no longer included in the record received from the National Archives.

[4]The CI testified that it was a two-way transaction: Bruce would pay $1000 for the M-16 and the CI would pay $500 for drugs. (Tr. Tran. Vol. IV 393:14-22.)

[5]The M-16 never left the hotel room. (Tr. Tran. Vol. III 166:14-22; 410:21-23.)

[6]Count Two did not describe the machine gun as the Tech-9 seen in petitioner's car. Upon the defendant's objection, the court heard argument whether the testimony about the Tech-9 related to the charged § 924(c) count, and the United States assured the court that the Tech-9 was not a charged gun in the indictment but related to overt acts described in the indictment. (Tr. Tran. Vol. IV 394-96.) The court will refer to the firearm as "Tech-9" as used in the record although it is properly named "Tec-9".

[7]Johnson was a co-defendant of the same conspiracy, and the Court of Appeals consolidated the appeals.

[8]The indictment alleged in pertinent part that Bruce was a principal in a drug-trafficking conspiracy. Bruce was charged with one count of drug conspiracy ("Count One"); nine drug distribution counts; the use of a firearm in connection with a drug offense under 18 U.S.C. § 924(c)(1) ("Count Two"); being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1); and attempting to escape from custody.

[9]April 15, 1994, was the date petitioner met the CI at the hotel room for the M-16. (Tr. Tran. Vol. III 146:2-11.)

Western Judicial District of Virginia, unlawfully did, during and in relation to a drug trafficking crime[,] use or carry a machinegun [sic] firearm described as a Colt M-16 AI, 5.56 mm, serial number 9271192[, i]n violation of [18 U.S.C. §] 924(c)(1).[10]

(Indictment 10.)

Petitioner pleaded not guilty and requested a trial by jury. The parties stipulated that the M-16 was a fully-functional and fully-automatic machine gun that moved in interstate commerce. (Tr. Tran. Vol. III 158:5-16.) The CI testified that a law enforcement agency owned the M-16 machine gun and told him that he could not under any circumstance allow the M-16 outside of the hotel room. (Tr. Tran. Vol. IV 399:17-25 – 401:1-17; 406; 410:14-23.) Petitioner and the CI were in the hotel room for three minutes, and they did not speak for the first two minutes while petitioner searched the room. (Tr. Tran. Vol. III 106:13-18; 161:23-24; 162:4-6; Vol. IV 407:4-19.) Petitioner picked up the M-16 during negotiations in the last minute of the meeting inside the hotel room before putting it down and leaving the hotel room empty-handed. (Tr. Tran. Vol. IV 389-90.) The CI did not see petitioner have any other firearm in the hotel room. (Tr. Tran. Vol. III 160:13-16; Vol. IV 4046-10.)

Upon the United States' motion, the court dismissed two counts against petitioner, and the jury returned guilty verdicts for the remaining counts, including Counts One and Two.

---

[10] At that time, § 924(c)(1) read in pertinent part:
> Whoever, during and in relation to any . . . drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, . . . and if the firearm is a machinegun, . . . to [be] imprison[ed] for thirty years. * * * Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.

18 U.S.C. § 924(c)(1) (1994).

4

Petitioner's conviction for Count One was the most serious offense; he received a life sentence for the conspiracy. Petitioner also received up to twenty years for the other charges[11], to be served concurrently with his life sentence. For Count Two, the court sentenced petitioner to 360 months, to be served consecutively to his life and other sentences, and imposed a $50 special assessment.[12]

On appeal, petitioner argued, inter alia, that the evidence was insufficient to prove either that he "used or carried" a firearm or that he did so "during and in relation to" a drug trafficking crime. The Court of Appeals disagreed and affirmed his conviction. The Court of Appeals relied on United States v. Harris, 39 F.3d 1262, 1269 (4th Cir. 1994)[13], in which that defendant fronted a person money and drugs as payment for the services to both find and obtain a shotgun for the defendant; the Harris court held that such a barter constituted "use" under § 924(c). The Court of Appeals, also relying on Smith v. United States, 508 U.S. 223, 226, 299 (1993),[14] further held that Bruce's attempt to purchase the M-16 by proposing a sale of cash and drugs and by "possessing it for valuation" was "'used' as 'an item of barter' even if the proposed drug

---

[11]Specifically, they were counts 3, 9, 11, 20, 21, 22, 24, 29, and 32.

[12]Upon his release from imprisonment, petitioner would also be supervised for five years for the conspiracy charge and three years for each other conviction, including Count Two. The other years of supervised release run concurrently to the five years' supervision for the conspiracy. Therefore, Count Two did not impact his term of supervised release.

[13]The Court of Appeals issued Harris on November 4, 1994, after the Supreme Court issued Smith v. United States, 508 U.S. 223 (June 1, 1993). The Supreme Court issued Bailey v. United States on December 6, 1995, and issued Watson v. United States on December 10, 2007.

[14]The Supreme Court in Smith held that a person "uses" a firearm when trading it for drugs. Smith, 508 U.S. at 241 ("We therefore hold that a criminal **who trades his firearm for drugs "uses" it** during and in relation to a drug trafficking offense within the meaning of § 924(c)(1).") (emphasis added). Bruce's actions involved the opposite; he was supposed to trade money and drugs to receive the government's machine gun and money, but the deal fell through.

5

transaction [wa]s not consummated." Johnson, 1997 U.S. App. LEXIS 2303 at*11, 1997 WL 56903 at *4. The Supreme Court of the United States denied his subsequent petition for a writ of certiorari.

Petitioner filed his first 28 U.S.C. § 2255 motion to vacate his convictions in January 1998, claiming that his counsel provided ineffective assistance. One of the various claims petitioner alleged was that counsel was ineffective for not arguing that the attempt to trade cash and drugs to receive an M-16 did not constitute "use" of a machine gun during and in relation to a drug trafficking offense under § 924(c). The court relied on the Fourth Circuit's holding in Johnson, petitioner's direct appeal, to determine that counsel did not perform deficiently. The court stated:

> Although Bruce complains about the quality of the government's audiotape of this incident, he offers no specific evidence or argument that counsel could have presented in support of his "no use" defense. Along with the videotape of Bruce handling the gun, the government presented [the CI's] testimony that Bruce offered to exchange drugs and money for a machine-gun; that they met in a hotel room to negotiate; that during the negotiations, Bruce picked up the gun, using a bedsheet, and examined it; that Bruce then showed [the CI] cocaine and crack beside another firearm in his car; and that Bruce told [the CI], "I've got the dope and I've got the cash, now, you bring the [M-16] out here and we can do a deal." This evidence satisfies the definition of "use" for § 924(c) purposes under Smith and Bailey. Accordingly, the court finds no reasonable likelihood that the outcome would have been different absent counsel's alleged error, and the claim fails under Strickland.

Bruce v. United States, No. 7:98-cv-0039, slip op. at 12 (W.D. Va. Aug. 27, 1998). See Strickland v. Washington, 466 U.S. 668, 687-88 (1984) (stating that judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight and to evaluate the challenged conduct from counsel's perspective at the time). After the Fourth Circuit denied petitioner a certificate of appealability of the § 2255

6

dismissal order, petitioner unsuccessfully filed successive § 2255 motions and requests for leave to file successive § 2255 motions.

In the instant petition, petitioner argues that he is innocent of Count Two because his actions do not satisfy § 924(c)'s use element, pursuant to the Supreme Court's holdings in Watson. Petitioner also raises two additional claims in his reply to the United States' second response: his sentencing guidelines were miscalculated and Watson requires his conviction for being a felon in possession of a firearm, pursuant to 18 U.S.C. § 922(g)(1), to be vacated.

II.

A petitioner may use a § 2241 habeas petition to attack his conviction if § 2255 is inadequate and ineffective. 28 U.S.C. § 2255(e). This scenario occurs when: (1) settled law of this circuit or the Supreme Court established the legality of the conviction at the time of conviction; (2) the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal subsequent to the prisoner's direct appeal and first § 2255 motion; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not constitutional law. In re Jones, 226 F.3d 328, 333-34 (4th Cir. 2000). See 28 U.S.C. § 2255(e).

For petitioner's two newly raised claims, Watson did not address the legality or interpretation of § 922(g), and petitioner could have challenged the alleged sentencing-calculation errors on direct appeal or via § 2255. Accordingly, petitioner's claims challenging his § 922(g) conviction and his sentencing calculations do not qualify for § 2241 review under § 2255's savings clause. Accordingly, these claims are dismissed without prejudice so petitioner may seek permission from the Court of Appeals to file a successive § 2255 motion about these

issues.

However, the settled law of § 924(c)'s "use" element differed between the time of petitioner's conviction and after his first § 2255 motion, and Watson concerns a matter of statutory construction, not constitutional law. Thus, petitioner qualifies to proceed under § 2241 via § 2255's savings clause to challenge his § 924(c) conviction. A § 2241 petition should name as respondent "the person who has custody over [the prisoner]." 28 U.S.C. § 2242. See id. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."). As the Supreme Court explained in 1885, "these provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." Wales v. Whitney, 114 U.S. 564, 574 (1885).

However, jurisdiction to grant § 2241 relief is limited to Supreme Court Justices and "the district courts and any circuit judge within their respective jurisdictions." Petitioner named as respondent the warden of the federal facility in which he is incarcerated in Pennsylvania, far beyond the jurisdiction of this court.

Nevertheless, petitioner is not without a remedy. "[F]ederal courts should act in doing justice if the record makes plain a right to relief." United States v. Morgan, 346 U.S. 502, 505 (1954). "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through [a writ of error coram nobis] only under circumstances compelling such action to achieve justice." Morgan, 346

8

U.S. at 511. A grant of a writ of error coram nobis may be appropriate after a retroactive dispositive change in the law. United States v. Mandel, 862 F.2d 1067, 1075 (4th Cir. 1988). Accordingly, the court determines that petitioner's challenge to his § 924(c) conviction qualifies for review pursuant to 28 U.S.C. § 1651(a) because relief under § 2255 is inadequate and ineffective, the court does not have jurisdiction to issue a writ of habeas corpus via § 2241, and a retroactive change in § 924(c)'s "use" element no longer made certain acts unlawful.

A.  Relevant § 924 Case Law

The United States Supreme Court issued a series of judicial opinions that subsequently impacted petitioner's conviction, one of which prompted the Congress to amend § 924(c). The court discusses these cases in turn as they relate to the matter being considered.

Before petitioner's trial, the Supreme Court held in Smith v. United States, 508 U.S. 223, 241 (1993), that "a criminal who trades his firearm for drugs 'uses' it during and in relation to a drug trafficking offense within the meaning of § 924(c)(1)." The Supreme Court analyzed the common meaning of "use" and how criminals rely on firearms as both protection and currency to support drug trafficking. Id. at 228, 230, 234-35.

Before the Fourth Circuit affirmed petitioner's conviction, the Supreme Court held in Bailey v. United States, 516 U.S. 137 (1995), "that the word 'use' in the pre-[1998] amendment version of § 924[(c)] 'must connote more than mere possession of a firearm by a person who commits a drug offense." United States v. O'Brien, No. 08-1569, 130 S. Ct. 2169 (May 24, 2010) (quoting Bailey, 516 U.S. at 143). Thus, mere possession was not a sufficient basis; "use" "requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense . . . ." Bailey,

516 U.S. at 143. The Supreme Court in Bailey noted that "[h]ad Congress intended possession alone to trigger liability under § 924(c)(1), it easily could have so provided" by including the word "possess."

Congress thereafter amended § 924(c) in 1998 to make it unlawful either to possess a firearm in furtherance of a drug trafficking crime or to use or carry a firearm during and in relation to a drug trafficking crime. After this amendment, the Supreme Court decided Watson, holding that a person does not "use" a firearm under § 924(c)(1) when he receives the firearm in trade for drugs, the reverse scenario described in Smith. The Supreme Court noted that "to treat receipt [of a firearm] in trade as "use" would create unacceptable asymmetry with Smith." 552 U.S. at 79, 82.

B.   Petitioner's Claim

The relevant facts in this case clearly show that petitioner never owned the M-16 and his relationship to it existed for less than the minute he picked it up, "for valuation purposes" as inferred by the Court of Appeals. Smith is inapplicable to the facts at hand because, unlike Smith, petitioner did not trade his M-16 for drugs; the Harrisonburg Police Department and its bailees, the ATF and CI, retained ownership of the M-16 throughout the entire encounter and petitioner never intended on receiving any drugs.[15] (Tr. Tran. Vol. III 155:14-21;156:9-10.) See, e.g., K-B Corporation v. Gallagher, 218 Va. 381, 384, 237 S.E.2d 183, 185 (1977) (describing bailment as delivery by the bailor and an acceptance by the bailee with a duty to account for the thing as the property of another). Notably, the CI and petitioner did not exchange anything

---

[15]The officer testified that he wanted the CI to sell the M-16 for cash and cocaine. (Tr. Tran. Vol. III154-55.) However, as the CI testified, the negotiations ended at the offers and counteroffers of two separate transactions: cash from Bruce to get the M-16 and cash from the CI to receive cocaine.

10

except words.

Bailey also does not support the facts of this case. Bailey determined that possessing a firearm kept near the scene of drug trafficking was not "use" under § 924(c)(1). Petitioner, indeed, possessed the M-16 for a few moments during the negotiations to buy it and sell drugs. Petitioner also at least constructively possessed the Tech-9 "machine-gun pistol" under his car seat during negotiations outside the hotel room. Specifically, the CI testified that he saw eight inches of its barrel sticking out from underneath the front of driver's seat where petitioner sat. (Tr. Tran. Vol. IV 397.) The CI did not state that petitioner ever touched the Tech-9; he merely placed a bag of drugs on the car floor near the Tech-9. (Id.) Without "active employment" of the Tech-9, Bailey does not support petitioner "using" the M-16 or Tech-9.[16] See Bailey, 516 U.S. at 143.

The facts in Watson are analogous to petitioner's scenario:

> Watson[] told a Government informant that he wanted to acquire a gun. On the matter of price, the informant quoted no dollar figure but suggested that Watson

---

[16] Regardless of the facts about the Tech-9 machine gun, Count Two of the indictment specifically alleged petitioner used or carried an M-16, not a Tech-9, during and in relation to a drug trafficking crime on April 15, 1996. Even if petitioner's possession of the Tech-9 could constitute "use" of a "machine gun" under Count Two, the court must not retroactively amend the unambiguous charge in Count Two. The Fifth Amendment provides for a right to indictment by grand jury. U.S. Const. amend. V; United States v. Floresca, 38 F.3d 706, 709 (4th Cir. 1994) (en banc). This right would be violated if the court retroactively substitutes the Tech-9 as the basis of conviction for Count Two, an act different than the one for which the grand jury indicted him. The government chose to indict petitioner under § 924(c)(1) for the M-16, not a completely different type of "machine-gun pistol" that would implicate specific facts and different legal defenses than for the M-16. See United States v. Holt, 529 F.2d 981 (4th Cir. 1975) (stating an indictment is amended when it charges a different offense from what the indictment informed the defendant of the charges to prepare his defense and in protecting the defendant against another prosecution for the same offense). Furthermore, the United States specifically told the court during a sidebar that the Tech-9 that was not firearm charged by the indictment, and those representations should estop an argument that the Tech-9 should now become the basis for Count Two. (Tr. Tran. Vol. IV 395:23-25.) See Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982) ("In certain circumstances a party may properly be precluded as a matter of law from adopting a legal position in conflict with one earlier taken in the same or related litigation."). See also Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996) (discussing elements of judicial estoppel). Moreover, the jury could easily distinguish the M-16 that was presented to it during the trial and the characteristics of the Tech-9 described by the CI. Compare Tr. Tran. Vol. III 156-57, with Tr. Tran. Vol. IV 396:19-25.

could pay in narcotics. Next, Watson met with the informant and an undercover law enforcement agent posing as a firearms dealer, to whom he gave 24 doses of [OxyContin] for a .50-caliber semiautomatic pistol. When law enforcement officers arrested Watson, they found the pistol in his car, and a later search of his house turned up a cache of prescription medicines, guns, and ammunition. Watson said he got the pistol "to protect his other firearms and drugs." A federal grand jury indicted him for distributing a Schedule II controlled substance and for "using" the pistol during and in relation to that crime, in violation of § 924(c)(1)(A).

Watson, 552 U.S. at 77. In overturning Watson's § 924(c) conviction, the Supreme Court noted, "The Government may say that a person 'uses' a firearm simply by receiving it in a barter transaction, but no one else would. . . . So when Watson handed over the drugs for the pistol, the informant . . . "used" the pistol to get the drugs, just as Smith held, but regular speech would not say that Watson himself used the pistol in the trade." Id. at 79.

The United States proposes the same flawed reasoning in this matter, primarily that "Petitioner was using the [M-16] as an item of negotiation, where the Petitioner's intent was to obtain [the M-16] as a tool of the trade in furtherance of the objectives of his drug trafficking conspiracy." This flawed argument that petitioner "used" the M-16 by trying "to obtain [it]" is not supported by Smith, Bailey, or Watson. Petitioner and the CI did not complete the transaction, and petitioner's relationship to the M-16 was still only holding it for less than a minute "for valuation purposes." In reviewing petitioner's direct appeal, the Court of Appeals relied on Smith to say that petitioner used the firearm even though the sale was never completed. However, the defendant in Smith "used" the firearm by "trying" to trade his firearm to receive drugs, unlike petitioner who attempted to trade his cash and narcotics to receive law enforcement's M-16. Moreover, petitioner's handling and hypothetical receipt of the M-16 would not constitute "use" under § 924(c) even if one assumes that petitioner had successfully

12

traded cash and narcotics for the M-16 and cash.

Moreover, the evidence is not sufficient to sustain the conviction on § 924(c)'s "carry" element. "The plain meaning of the term 'carry' as used in § 924(c)(1) requires knowing possession and bearing, movement, conveyance, or transportation of the firearm in some manner." United States v. Mitchell, 104 F.3d 649, 653 (4th Cir. 1997). Law enforcement delivered the M-16 to the hotel room, the CI unpacked the M-16 from its satchel bag and placed it on the bed, and the M-16 never left the hotel room or the CI's presence. Instead of transporting the M-16, petitioner merely picked it up and placed it back down before exiting the hotel room. While petitioner did possess the firearm, he did not convey it or move it to any sufficient degree to constitute "carrying" it. See Bailey, 516 U.S. at 145 (quoting then Chief Judge Breyer's statement in his dissent in United States v. McFadden, 13 F.3d 463, 467 (1st Cir. 1994), that the ordinary meanings of the words "use" and "carry" describe activity beyond simple possession). To permit petitioner's handling of the M-16 to constitute "carrying" would obviate § 924(c)'s possession element, despite Congress' intent to delineate three distinct acts for different crimes in response to Watson.

The United States also reiterates in its responses that petitioner conspired with others to distribute narcotics; carried, used, or possessed other firearms to support the conspiracy; shot at people; and was a danger to society. While the court agrees with these characterizations, the court is not prejudiced against petitioner's arguments simply because he is a convict. As explained by the Court of Appeals:

> In essence, the government asks this court to . . . convict the defendants of crimes with which they were not charged. This, we decline to do. The sufficiency of the evidence in a case is a question in each instance to be

> submitted to a jury, subject only to being set aside for insufficiency. United States v. Caudle, 758 F.2d 994, 997 (4th Cir. 1985). We are not organized to decide if the petitioners are bad men or even if they have committed crimes. Our function is to decide whether or not, under the law, they are guilty of the crimes as charged in the indictment . . . .

Mandel, 862 F.2d at 1075. Cf id. at 1076-77, 1079 (Hall, J., dissenting) (stating that coram nobis should be granted only when a defendant did not commit any illegal act because societal interests in favor of final criminal judgments outweigh justice to vacate a conviction for a technically legal act by a person engaging in other unlawful behavior.) The evidence is not sufficient to find that petitioner "used" the M-16 machine gun on April 15, 1994, as required by § 924(c) and Watson. The court cannot permit the § 924(c) conviction to remain in effect, even if it produced a sentence to be served for thirty years beyond petitioner's life. Nevertheless, the $50 statutory special assessment that petitioner received for Count Two is a collateral consequence of his conviction that constitutes actual prejudice. See Rutledge v. United States, 517 U.S. 292, 301-03 (1996) ("The Government suggests, however, that petitioner will never be exposed to collateral consequences . . . because he is subject to multiple life sentences without possibility of release. We need not conclusively resolve the matter, for there is no doubt that the second conviction carried with it, at very least, a $ 50 assessment. . . . [T]he assessment was therefore as much a collateral consequence of the conspiracy conviction . . . ."). Accordingly, the court issues a writ of error coram nobis and vacates petitioner's conviction for Count Two. The Clerk shall refund to petitioner any amount paid toward the special assessment imposed for Count Two. See, e.g., United States v. Jones, 403 F.3d 604, 607 (8th Cir. 2005).

A sentencing hearing is necessary because petitioner's conviction for Count Two affected the guideline calculations and imposed sentence for the other convictions. See United States v.

14

Lang, 81 F.3d 955, 963 (10th Cir. 1996) (holding that when a defendant's conviction under § 924(c) has been reversed on sufficiency of the evidence grounds, the defendant must be resentenced to determine the applicability of the U.S.S.G. § 2D1.1(b)(1) enhancement); United States v. Fennell, 77 F.3d 510, 510-11 (D.C. Cir. 1996) (per curiam) (remanding for resentencing after reversal of appellant's conviction under 18 U.S.C. § 924(c)); United States v. Roulette, 75 F.3d 418, 426 (8th Cir. 1996) (finding that the inapplicability of the prohibition against applying the two-level enhancement once the defendant's conviction under § 924(c) has been reversed warranted remanding for resentencing). Sentencing for Count Two precluded the application of a specific offense characteristic of possession of a dangerous weapon. See U.S.S.G. § 2D1.1(b)(1) (1994) (increasing base offense level by 2 levels for possessing a dangerous weapon); id. § 2K2.4 App. Note 2 (1994) (stating that a defendant who was convicted under § 924(c) should not receive the two-level characteristic increase). The Clerk shall wait no fewer than sixty days to schedule the sentencing hearing and shall arrange for the appointment of counsel upon scheduling the sentencing hearing.[17]

III.

For the foregoing reasons, the court issues a writ of error coram nobis; vacates petitioner's conviction for Count Two; and directs the Clerk to refund any payment made toward the special assessment imposed for Count Two, schedule a sentencing hearing, and appoint counsel. Any

---

[17] The court finds good cause to extend the time to schedule the sentencing hearing because the order is being entered in both a civil and criminal case. See Fed. R. Crim. P. 32(b). The United States should not bear additional transportation and local housing costs, and an inmate must not be allowed to use judicial proceedings to control his place of incarceration if a sentencing hearing is scheduled before the expiration of time for possible subsequent, on-going civil proceedings.

15

future documents or proceedings should be noted only on the criminal docket.[18]

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the petitioner and counsel of record for the United States.

**ENTER**: This 20th day of October, 2010.

*/s/ James H. Jarvis*
Senior United States District Judge

---

[18]In <u>United States v. Morgan</u>, 346 U.S. 502, 506 n.4 (1954), the Supreme Court of the United States noted that a coram nobis proceeding is a "step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding." This matter proceeded in a separate civil action by way of a transferred § 2241 petition. Because all relevant records are in the criminal action, the Clerk will docket this memorandum opinion and order in both the criminal and civil actions and then strike the civil action from the active docket.

The court also notes that, despite being a step in the criminal action, CM/ECF does not provide a mechanism to open a coram nobis shell case to statistically account for coram nobis petitions. For example, § 2255 actions receive a shell case by which the Administrative Office of the United States Courts can identify and track § 2255 proceedings within a criminal docket. Without a coram nobis shell case, the court does not receive credit for collateral review, although the court reviews the petition and prior proceedings similar to § 2255 cases as opposed to other motions in closed criminal cases.

16